UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARK BLAIR BARTA,**

      **Plaintiff,**

  v.                                     Civil Action 2:20-cv-1641
                                               Magistrate Judge Chelsey M. Vascura

**LLOYD J. AUSTIN III,**
**Secretary, United States**
**Department of Defense,**

      **Defendants.**

## OPINION AND ORDER

Plaintiff, Mark Blair Barta, brings this action against Defendant, Lloyd J. Austin, III, Secretary, United States Department of Defense, asserting that Defendant failed to hire Plaintiff due to Plaintiff's prior age discrimination complaints against Defendant. This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 35.) For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

      **I.**       **BACKGROUND**

The relevant facts are largely undisputed. Plaintiff began working as a G-12 litigation attorney for the Office of General Counsel ("OGC") for Defense Finance and Accounting Services ("DFAS"), a division of the United States Department of Defense, in 1992. (Barta Test. 13, ECF No. 35-1.) Plaintiff was shortly after reassigned to an accounting and fiscal law attorney position based in Columbus, Ohio. (*Id.*) In the mid-2000s, DFAS's General Counsel,

Jack Mester, created a consolidation plan that would close several DFAS OGC offices—including the office in Columbus, Ohio—and consolidate most OGC services in Indianapolis, Indiana. (Mester Test. 41–45, ECF No. 35-4.) Current OGC employees were given three options: they could "move with the work" and join the OGC office in Indianapolis; they could retire, if eligible; or they could find employment elsewhere. (Nelson Decl. 7, ECF No. 35-10.) Plaintiff opposed this plan, making his views known at multiple staff meetings that the consolidation plan disproportionately affected older OGC employees for whom relocating would be more difficult. Plaintiff asserts that he stated during these staff meetings that OGC was "getting rid of all the older people" and "replacing them with younger people," and that "all of the employees who were actually forced to move, or forced to separate, were older than 40." (Barta Test. 18, 20, ECF No. 35–1.)

By 2009, Plaintiff had attained a GS-14 level position withing the OGC's Columbus office. Rather than move to Indianapolis or retire, Plaintiff obtained a GS-14 level non-attorney position as a Strategic Policy Analyst within another branch of DFAS. (*See* Position Descriptions, ECF No. 35-2, PAGEID #205–09.)

Three years later, in 2012, Plaintiff applied for the GS-15 level position of Supervisory Attorney Advisor in OGC's Indianapolis office. (Conrad Decl. 5, ECF No. 35-7.) The hiring panel for this position consisted of four individuals: Shelby Conrad (the "selecting official" for the position), Linda Etter, Neal Nelson, and Frank Yount. (Yount Decl. 11, ECF No. 35-9.) The panelists reviewed application materials and made recommendations as to which individuals should be interviewed, but the final hiring decision was made by Conrad. (Conrad Decl. 5, ECF No. 35-7.) The panelists decided to interview only those candidates who had been recommended for an interview by at least three of the four panelists. (Nelson Decl. 8, ECF No. 35-10.) Plaintiff

2

was recommended for an interview by Conrad and Etter, but not by Nelson or Yount; consequently, Plaintiff did not receive an interview and was not considered further for the position. (*Id.*; Yount Decl. 11, ECF No. 35-9.) Conrad ultimately selected Frank Quinlan for the Supervisory Attorney Advisor position. (Conrad Dec. 5–6, ECF No. 35-7.)

Plaintiff filed an Equal Employment Opportunity ("EEO") retaliation complaint pursuant to 29 C.F.R. § 1614.106 against Defendant on February 7, 2013, alleging Plaintiff was not selected for the Supervisory Attorney Advisor position in retaliation for his age-related opposition to the OGC consolidation plan. (Investigative File, ECF No. 35-2, PAGEID #194.) In responding to the complaint, Defendant obtained declarations from the four hiring panelists. When asked why he did not select Plaintiff to be interviewed, Nelson specifically relied on Plaintiff's opposition to the consolidation plan:

> Mr. Barta was a vocal opponent of [the consolidation] plan. As a result, he elected to seek other employment and found a non-attorney position at DFAS-Columbus. In my opinion, this showed a lack of support for the OGC leadership and a lack of commitment to continuing his career as a federal government attorney. . . . The position of AGC [Assistant General Counsel] requires strong leadership qualities. One of them is supporting senior leadership despite the fact that you don't agree with their decision. In my evaluation of Mr. Barta's potential for success as an AGC, I had serious doubts about his willingness and ability to do what is required by that position."

(Nelson Decl. 7, ECF No. 35-10.) During the hearing on Plaintiff's EEO complaint, Nelson further testified that he did not select Plaintiff for an interview because, "at the time when a decision is made by the leader, then as part of the management team you have an obligation to support that decision and move on," and Plaintiff "wasn't going to support the boss." (Nelson Test. 103, ECF No. 35-6.) Other DFAS employees testified that Nelson was present in the staff meetings in which Plaintiff voiced his opposition to the consolidation plan on the basis that it

3

discriminated against older employees. (Delarosa Test. 121–22, ECF No. 35-1; Bolon Test. 8–9, ECF No. 35-4.)[1]

On September 25, 2018, the Administrative Judge presiding over Plaintiff's EEO complaint issued a decision finding that "[t]here is no evidence that Complainant's age or his prior EEO activity was considered by panel members when they decided not to interview him for the Supervisory Attorney position." (Decision 12, ECF No. 35-3.) Plaintiff commenced this lawsuit pursuant to 29 C.F.R. § 1614.110 on March 31, 2020. (ECF No. 1.)

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

---

[1] Although Nelson testified that he did not recall that Plaintiff's opposition was based on age discrimination (Nelson Test. 101, 103–04, ECF No. 35-6), this disputed fact is resolved in favor of Plaintiff as the non-movant. *See Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011). Further, Defendant does not dispute that Defendant knew of Plaintiff's protected activity, *i.e.*, his complaints of age discrimination. (Def.'s Mot. for Summ. J. 13–19, ECF No. 35) (challenging other elements of retaliation claim, but not the element requiring Defendant's knowledge of protected activity).

in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.  ANALYSIS

**A.  Statutory Framework**

The Court must first establish the proper statutory framework for Plaintiff's claims. Plaintiff's original and Amended Complaint do not specify any particular anti-retaliation statute under which he is proceeding, referring only to 29 C.F.R. § 1614.110, which permits complainants to commence a civil action in federal court following a federal agency's final decision regarding a complaint of unequal employment opportunities on the basis of race, color, religion, sex, national origin, age, disability, or genetic information. 29 C.F.R. §§ 1614.101, 1614.110. But it is apparent from Plaintiff's Amended Complaint that he seeks redress for Defendant's alleged retaliation due to Plaintiff's age discrimination complaints regarding the consolidation plan. Accordingly, the appropriate statutory framework is that of the Age Discrimination in Employment Act ("ADEA"), which prohibits retaliation against employees because they have opposed age-discriminatory practices. *See* 42 U.S.C. § 633a(a); *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008).

Defendant's Motion for Summary Judgment assumes that Plaintiff advances claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), specifically citing § 2000e-3, which makes its "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (Def.'s Mot. for Summ. J. 12–13). But Title VII prohibits discrimination on the basis of only "race, color, religion, sex, or national origin" and does not govern age discrimination or retaliation for opposing practices that discriminate on the basis of age. *See* 42 U.S.C. § 2000e-16(a). Plaintiff's claims are therefore not asserted under Title VII.

Yet Title VII is not irrelevant to the analysis. Courts frequently look to cases construing Title VII when analyzing ADEA claims. *See, e.g., Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) ("We have explained that Title VII's anti-retaliation provision is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate to look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-retaliation clause."). Both the ADEA and Title VII make separate provision for personnel actions made by the federal government, as opposed to employment practices by private employers or state or local governments. *See* 29 U.S.C. § 633a (ADEA); 42 U.S.C. § 2000e-16 (Title VII). The two statutes' federal-sector anti-discrimination provisions both require that "[a]ll personnel actions . . . shall be made free from any discrimination based on" their respective protected characteristics (*i.e.*, "discrimination based on age" under the ADEA, and "discrimination based on race, color, religion, sex, or national origin" under Title VII). 29 U.S.C. § 633a(a); 42 U.S.C. § 2000e-16(a). Indeed, "[t]he ADEA federal-sector provision was patterned 'directly after' Title

6

VII's federal-sector discrimination ban." *Gomez-Perez*, 553 U.S. at 487 (quoting *Lehman v. Nakshian,* 453 U.S. 156, 167, n. 15 (1981)).

The United States Supreme Court has held that the ADEA's federal-sector antidiscrimination language (requiring that "[a]ll personnel actions . . . shall be made free from any discrimination based on age") also prohibits "retaliation on the basis of filing an age discrimination complaint." *Gomez-Perez*, 553 U.S. at 479, construing 29 U.S.C. § 633a(a). This is so even though, unlike the ADEA's private-sector provisions, the federal-sector provisions contain no separate, express prohibition on retaliation. *Id.*; *cf.* 29 U.S.C. § 623(d) ("It shall be unlawful for [a private or state or local government] employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by [the ADEA's private-sector prohibition on age discrimination], or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.").

But although both the federal- and private-sector ADEA provisions prohibit retaliation, there is an important difference in the plaintiff's burden of proof between the two owing to their differing statutory language. Namely, a private-sector employee seeking redress for retaliation "because" the employee opposed a discriminatory practice must prove that the employee's opposition was the "but-for cause" of the resulting adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (requiring but-for causation for ADEA private-sector claims of discrimination "because of" age); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013) (construing Title VII's private-sector prohibition on retaliation "because" an employee opposed a practice made unlawful under Title VII as requiring but-for causation based

7

on *Gross*'s reasoning). On the other hand, because the federal-sector ADEA provision eschews the word "because" and requires instead that personnel actions be made "free from *any* discrimination based on age" (29 U.S.C. § 633a(a), emphasis added), the Supreme Court has recently determined that but-for causation is not required under the ADEA's federal-sector age discrimination prohibition. *Babb v. Wilkie*, 140 S. Ct. 1168, 1172 (2020) ("The plain meaning of the statutory text shows that age need not be a but-for cause of an employment decision in order for there to be a violation of § 633a(a)."). Because the Supreme Court has located the ADEA federal sector's prohibition on retaliation in this same statutory language, it can be assumed that the Supreme Court would also allow a federal-sector employee to establish an ADEA retaliation claim without evidence of but-for causation. *See Gomez-Perez*, 553 U.S. at 479 (holding that § 633a(a)'s language that "[a]ll personnel actions . . . shall be made free from any discrimination based on age" also prohibits "retaliation on the basis of filing an age discrimination complaint").

Accordingly, Plaintiff can succeed on his retaliation claim either (1) by demonstrating that his complaints of age discrimination were the but-for cause of his non-selection (*i.e.*, by making out a "single-motive" claim), or (2) by demonstrating that, although there may have been other, non-retaliatory reasons for his non-selection, his complaints of age discrimination were nevertheless among the reasons for his non-selection (*i.e.*, by making out a "mixed-motive" claim). Plaintiff is not clear as to which type of claim he intends to advance. Accordingly, the Court will consider both types of claims.

**B.**     **Single-Motive Claim**

To succeed on a single-motive claim, Plaintiff must demonstrate that his age discrimination complaints were the but-for cause of his non-selection. Plaintiff can establish but-for causation via either direct or circumstantial evidence. *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (single-motive claim "requires that a plaintiff 'prove by a

preponderance of the evidence (which may be direct or circumstantial) that age was the "but-for" cause of the challenged employer decision'") (quoting *Gross*, 557 U.S. at 177–78). "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997).

### 1. Circumstantial Evidence

Defendant assumes that Plaintiff cannot present direct evidence of a retaliatory motive and confines his summary judgment arguments to the *McDonnell Douglas* circumstantial evidence framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (applying *McDonnell Douglas* to private-sector ADEA retaliation claim). Plaintiff bears the initial burden under the *McDonnell Douglas* framework to "establish a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) this exercise of his protected civil rights was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.* Once the plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Id.* "If the defendant satisfies this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." *Id.*

Defendant does not dispute that Plaintiff can satisfy the first two elements—that Plaintiff engaged in ADEA-protected activity when he opposed the consolidation plan on grounds that it had a disparate impact on older employees, and that Defendant knew of this protected activity— but argues that Plaintiff can neither establish that Defendant took an adverse employment action

against him, nor that there was a causal connection between Plaintiff's protected activity and the non-selection. (Def.'s Mot. for Summ. J. 14–19, ECF No. 35.) The Court disagrees, but ultimately concludes that even if Plaintiff can establish a prima facie case of retaliation, Plaintiff has not rebutted Defendant's legitimate, non-discriminatory reasons for Plaintiff's non-selection.

        **a.**     **Adverse Action**

The adverse employment action identified by Plaintiff is Defendant's failure to select him for the Supervisory Attorney Advisor position. Defendant concedes that "[n]on-selection for a position may constitute an adverse employment action when the position offers additional material benefits to the selectee" and that "Plaintiff would have experienced additional material benefits by way of a pay increase had he filled the vacancy." (Def.'s Mot. for Summ. J. 14–15, ECF No. 35.) However, Defendant contends that Plaintiff's non-selection for the position in 2012 (which would have required Plaintiff to move to Indianapolis) cannot constitute an adverse employment action because Plaintiff had previously declined a similar position in Indianapolis in 2009 as part of the consolidation plan. (Def.'s Mot. for Summ. J. 15, ECF No. 35.) Defendant's argument is essentially that Plaintiff could not have wanted the position in 2012, and therefore not being selected for it was not an "adverse" action, because Plaintiff did not want a similar position in 2009. But there are a multitude of reasons why Plaintiff's willingness to move to Indianapolis could have changed in the intervening three years. As just one example, no party has introduced evidence that Plaintiff could have obtained a GS-15 level position in 2009 had he transferred to Indianapolis—presumably, Plaintiff would have instead been transferred at his then-current GS-14 level. Thus, Plaintiff might not have been willing to move for a GS-14 level job, but might have been willing to move for a GS-15 level job with its attendant pay increase. Whatever Plaintiff's reasons, the mere fact that Plaintiff applied creates a factual issue as to whether he wanted the position, and whether his non-selection was accordingly adverse, in 2012.

Further, the case Defendant cites for this argument is distinguishable. In *Stewart v. Esper*, 815 F. App'x 8 (6th Cir. 2020), the United States Court of Appeals for the Sixth Circuit found the plaintiff had not established an adverse employment action in the form of not being given "special assignments," because, among other things, the plaintiff variously described special assignments both as something she had been "denied the opportunity" to work on and as having been assigned to her "over and over again" "as a form of punishment." *Stewart*, 815 F. App'x at 18–19. Thus, the Sixth Circuit found contradictions in the plaintiff's evidence not only as to the desirability of the denied opportunity, but also as to *whether the opportunity had been denied*. There is no such contradiction in this case because the parties agree that Plaintiff was non-selected for the Supervisory Attorney Advisor position. Defendant has accordingly failed to demonstrate Plaintiff's inability to establish an adverse employment action.

    **b.**  **Causal Connection**

In order to demonstrate a causal connection between his protected activity and an adverse employment action, Plaintiff must "proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 493–94 (6th Cir. 2010) (quoting *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 588 (6th Cir. 2009)). Plaintiff relies on the declaration and testimony of Neal Nelson for this element. Nelson declared that one of the reasons he did not choose Plaintiff to be interviewed is that Plaintiff was a "vocal opponent" of the consolidation plan, which, in Nelson's view, demonstrated a lack of leadership ability. (Nelson Decl. 7, ECF No. 35-10.)[2] It is undisputed that

---

[2] Defendant points out that, when Nelson was questioned at the EEO hearing about his declaration stating he did not choose Plaintiff for an interview because Plaintiff was a "vocal opponent" of the consolidation plan, Nelson stated, "[i]t was more for me the fact that you didn't—you didn't come—you didn't move. You elected to leave OGC rather than come with the work." (Nelson Test. 105, ECF No. 35-6.) But Nelson had just testified that, consistent with his prior declaration, one of the reasons he did not choose Plaintiff for an interview was that "at

11

Plaintiff's opposition to the consolidation plan was based on its alleged disparate impact on older employees. There is also testimony in the record that Nelson was present in meetings where Plaintiff voice his age-based concerns and therefore had direct knowledge that Plaintiff's "vocal opposition" was based on complaints of age discrimination. (Delarosa Test. 121–22, ECF No. 35-1; Bolon Test. 8–9, ECF No. 35-4.) Finally, the hiring panel's practice was to interview only those candidates who had been chosen by three or more panel members. (Nelson Decl. 8, ECF No. 35-10.) Conrad and Etter selected Plaintiff for an interview, but Nelson and Yount did not. (*Id.*; Yount Decl. 11, ECF No. 35-9.) Thus, Plaintiff has proffered evidence that Nelson's decision to not choose Plaintiff for an interview, due to his protected complaints of age discrimination, caused Plaintiff to not be selected for an interview by the panel. And because only those interviewed were eligible to be selected for the position, the undersigned concludes that Plaintiff's protected activity caused him to be non-selected for the Supervisory Attorney Advisor position. *See Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 381 (6th Cir. 2002) (causal connection shown where decision-makers specifically considered the plaintiff's exit questionnaire, which contained complaints about discrimination, in reaching their decision).

Defendant argues that Plaintiff cannot demonstrate a causal connection between Plaintiff's protected activity and his non-selection because the panel relied on other,

---

the time when a decision is made by the leader, then as part of the management team you have an obligation to support that decision and move on," and Plaintiff "wasn't going to support the boss." (*Id.* at 103.) Nelson had also testified that Plaintiff's unwillingness to move itself reflected a lack of support for management decisions. (*Id.*) ("I did not believe that Mr. Barta supported the decision once made, because he elected to—rather than move with the work to the consolidated office, he elected to leave OGC.") Thus, Nelson's testimony that "it was more" Plaintiff's unwillingness to move does not negate his declaration's statement that one of the reasons that Nelson did not choose Plaintiff for an interview was his vocal opposition to the consolidation plan.

nondiscriminatory reasons to not select Plaintiff for the position. However, those reasons are better analyzed in the following step of the *McDonnell Douglas* framework below.

### c. Legitimate, Nondiscriminatory Reasons

Because Plaintiff established a prima facie case of retaliation, the burden now shifts to Defendant to offer a legitimate, nondiscriminatory reason for Plaintiff's non-selection for the Supervisory Attorney Advisor position. Defendant "is not required to persuade the court that it was actually motivated by the proffered reasons. Rather, it is sufficient for [Defendant] to raise a genuine issue of fact as to whether" Defendant retaliated against Plaintiff. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814–15 (6th Cir. 2011) (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981)). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine*, 450 U.S. at 255.

Defendant offers several such reasons. To wit, even if Plaintiff had been granted an interview, Defendant contends Plaintiff would not have ultimately been selected for the position due to deficiencies in Plaintiff's skill set:

- Plaintiff "had not been practicing law for approximately 3 to 4 years prior" and had not been a supervisor during that time. (Etter Decl. 6, ECF No. 35-8.)

- Plaintiff's "resume reflected typos, poor grammar, and was not well-prepared, which is not reflective of leadership skills." (*Id.*)

- The panel had concerns about Plaintiff's professionalism in his previous positions with DFAS. For example, on several occasions, Plaintiff provided legal advice to clients who were no longer within his area of responsibility at DFAS, making it "difficult, if not impossible, for the directorate to which [Yount] was assigned to maintain the uniformity of advice and counsel." (Yount Decl. 12, ECF No. 35-9.) Moreover, sometimes Plaintiff's advice was "different from the advice [ ] given to other sites or conflicted with what [Yount] believed the law to be." (*Id.*) When this occurred, "[Yount] had to contact the clients he had advised and discuss the matter with them." (*Id.*)

- Other attorneys "frequently complained to [Conrad] about working with Mr. Barta on legal issues where he has represented DFAS Policy. They have expressed discomfort

13

with his approach to legal issues and his advice. . . .[H]e tends to shoot from the hip providing bottom line advice without providing an appropriate analysis or explanation of the associated risks. He tends to tell the senior clients what they want to hear." (Conrad Decl. 6–7, ECF No. 35-7.)

Moreover, Conrad, the selecting official, concluded that Quinlan, who was ultimately selected for the position, was more qualified than Plaintiff:

- Conrad "rated Mr. Quinlan's technical expertise" in the relevant areas of the law "as superior to Mr. Barta's." (Conrad Decl. 6, ECF No. 35-7.)

- Conrad was "more impressed with the quality of Mr. Quinlan's work as a supervisor," noting that other attorneys had "told [Conrad] (unsolicited) on multiple occasions how they appreciate Mr. Quinlan's calm approach to supervision and his skills as a mentor." (*Id.* at 6–7.)

- Quinlan "provides his clients with legal conclusions as well as a reasoned analysis and is willing to broach with senior leaders the risks associated with" their favored ideas. (*Id.* at 7.)

Defendant has therefore satisfied his burden to rebut the presumption of retaliation.

### d. Pretext

The burden now shifts back to Plaintiff to establish that Defendant's proffered reasons are merely pretext for retaliation. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). Plaintiff has done none of these things. He does not dispute any of the facts underlying the panelists' evaluation of him or Quinlan, does not dispute that these were additional reasons (in addition to Nelson's statements regarding Plaintiff's vocal opposition to the consolidation plan) relied on by the panelists in not selecting him for the position, and does not dispute that these reasons were sufficient to select Quinlan over Plaintiff.

In sum, although Plaintiff can establish a prima facie case of retaliation, Plaintiff has not demonstrated that Defendant's proffered legitimate reasons for his non-selection were merely pretext for retaliation. Accordingly, Plaintiff cannot succeed on a single-motive claim using circumstantial evidence.

### 2. Direct Evidence

Plaintiff may still succeed on a single-motive claim if he can demonstrate via direct evidence that his protected activity was the but-for cause of his non-selection. "It is well settled that if a plaintiff presents direct evidence of discrimination, she need not proceed under the *McDonnell Douglas* formula." *Weigel*, 302 F.3d at 381–82. Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In the ADEA single-motive retaliation context, direct evidence is that which, "if believed, requires the conclusion that [the plaintiff's complaint of discrimination based on] age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530.

Although neither party considered the possibility of direct evidence in their briefing, the undersigned finds Nelson's statements that he did not select Plaintiff for an interview because he was a "vocal opponent" of the consolidation plan to be direct evidence of a retaliatory motive. Nelson declared that he did not select Plaintiff for an interview because he vocally opposed the consolidation plan; Plaintiff vocally opposed the consolidation plan on the basis that it disparately impacted older employees; therefore, Nelson's statements in his declaration "require[ ] the conclusion" that Plaintiff's age discrimination complaints caused Nelson to not select Plaintiff for an interview. *See Scheick*, 766 F.3d at 530. It makes no difference that Nelson couched his reasoning in terms of Plaintiff's opposition to leadership decisions in general and not specifically in terms of Plaintiff's opposition to leadership decisions on the basis of age

15

discrimination. From the multitude of permissible reasons to take employment actions, Congress has prohibited the few reasons having to do with protected characteristics and associated protected activity in statutes like the ADEA and Title VII. Nelson's general dislike of subordinate opposition must yield to the ADEA's specific protection of opposition based on good faith complaints of age discrimination.

However, even Plaintiff's direct evidence cannot overcome Defendant's other legitimate reasons for not selecting him for the Supervisory Attorney Advisor position in a single-motive claim. In other words, the direct evidence of Nelson's retaliatory motive is not sufficient to demonstrate that Plaintiff's protected activity was the but-for cause of Plaintiff's non-selection because Defendant has offered additional, legitimate reasons for not selecting Plaintiff. Having failed to rebut any of Defendant's legitimate reasons, Plaintiff's single-motive claim fails under either the circumstantial or direct evidence framework.

**C.     Mixed-Motive Claim**

The Court was unable to locate any Sixth Circuit precedent applying the Supreme Court's recent ruling in *Babb* that the federal-sector ADEA permits mixed-motive claims. However, the Sixth Circuit has spoken definitively on private-sector mixed-motive claims under Title VII. "[T]o survive a defendant's motion for summary judgment, a Title VII plaintiff asserting a mixed-motive claim need only produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) "race, color, religion, sex, or national origin was *a* motivating factor" for the defendant's adverse employment action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008) (quoting 42 U.S.C. § 2000e-2(m) (emphasis in original)). "This burden of producing some evidence in support of a mixed-motive claim is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's

16

claim." *Id.* "Moreover, as it is irrelevant, for purposes of a summary judgment determination, whether the plaintiff has presented direct or circumstantial evidence in support of the mixed-motive claim, *see Desert Palace*, 539 U.S. at 99–100, 123 S.Ct. 2148, we direct that this summary judgment analysis just described, rather than the *McDonnell Douglas/Burdine* burden-shifting framework, be applied in all Title VII mixed-motive cases regardless of the type of proof presented by the plaintiff." *Id.*

The statutory language providing for mixed-motive claims differs between Title VII's private-sector provisions (prohibiting the use of "race, color, religion, sex, or national origin [as] a motivating factor for any employment practice, even though other factors also motivated the practice," 42 U.S.C. § 2000e-2(m)) and the ADEA's federal-sector provisions (requiring that personnel actions "be made free from any discrimination based on age," 29 U.S.C. § 633a(a)). However, the Court can discern no practical difference between *Babb*'s holding that § 633a(a) is violated "[i]f age discrimination plays any part in the way a decision is made" and § 2000e-2(m)'s prohibition on the use of protected characteristics as "a motivating factor for any employment practice." *See Babb*, 140 S. Ct. at 1174. The Court therefore finds it appropriate to apply the Sixth Circuit's Title VII's private-sector mixed-motive guidance in *White* to federal sector ADEA claims.

Here, Plaintiff easily satisfies the elements set forth in *White*. First, as explained above, Defendant took an adverse action against Plaintiff when Plaintiff was non-selected for the Supervisory Attorney Advisor position in 2012. And second, Defendant's discrimination based on Plaintiff's protected activity was a motivating factor in Plaintiff's non-selection as evidenced by Nelson's declaration that he declined to select Plaintiff for an interview due to Plaintiff's vocal opposition to the consolidation plan. It certainly cannot be said that "the record is devoid

17

of evidence that could reasonably be construed to support the plaintiff's claim." *White*, 533 F.3d at 400. Plaintiff therefore survives summary judgment as to liability on his mixed-motive claim of retaliation.

However, the available remedies in a mixed-motive case are heavily circumscribed compared to single-motive cases. Specifically, to obtain "reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision," a mixed-motive plaintiff "must show that age discrimination was a but-for cause of the employment outcome." *Babb*, 140 S. Ct. at 1177–78. This distinction is necessary because the available remedies should place the plaintiff in the position he would have occupied in the absence of the impermissible discrimination or retaliation. *See id.* at 1178. If retaliation is not the but-for cause of Plaintiff's non-selection in 2012, then it cannot be said that Plaintiff would have been selected for the position (or even selected to interview for the position) in the absence of retaliation, and therefore to award Plaintiff the position, backpay, or compensatory damages would put Plaintiff "in a more favorable position than he or she would have enjoyed absent [retaliation]." *Id.* Instead, a federal-sector ADEA plaintiff who establishes liability for a mixed-motives claim can obtain only "injunctive or other forward-looking relief." *Id.*

All of the remedies sought in Plaintiff's original and Amended Complaints are "related to the end result of the employment decision." Specifically, Plaintiff seeks:

(1) Promotion to the GS-15 position.

(2) Promotion to any other position the Court deems more likely than not that the plaintiff would have obtained.

(3) Back pay, including the Plaintiff's increased TSP contributions, plus interest of gains in the TSP.

(4) Reimbursement for training and back training.

18

(5) Reimbursement for emotional distress, including medical bills relating to Type II diabetes.

(6) Such other remedies at law or equity that the Court may determine proper.

(Am. Compl. 2, ECF No. 26.) With the exception of the final "catch-all" request for relief, all of these remedies are foreclosed by *Babb*. Plaintiff may still be entitled to "injunctive or other forward-looking relief," although Plaintiff has not identified any such relief at this stage.

In sum, Defendant is not entitled to summary judgment as to liability on Plaintiff's mixed-motive claim, but Defendant is entitled to summary judgment as to the specific remedies Plaintiff sought in his Amended Complaint. Defendant is not, however, entitled to summary judgment on any injunctive or other forward-looking relief arising out of Plaintiff's mixed-motive claim.

## IV. DISPOSITION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 35) is **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff intends to advance a single-motive claim for retaliation under the ADEA, summary judgment in Defendant's favor is **GRANTED**. To the extent Plaintiff intends to advance a mixed-motive claim for retaliation under the ADEA, summary judgment is **DENIED** as to liability and as to any injunctive or other forward-looking relief arising out of Plaintiff's mixed-motive claim, but **GRANTED** in Defendant's favor as to Plaintiff's requests for damages, backpay, and reinstatement.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE